All rise, the United States Court of Appeals for the Ninth Circuit is now in session. Hi, it's Judge Gould, I'm presiding judge, and also I'm sitting with Judge Christin and Judge Press remotely, and we appreciate Ms. Lee's getting us set up here. Now, as for the argument, we'll hear from the appellants first, and my notes here indicate on the day sheet that there's 15 minutes total for appellants, that they had decided to do 5 minutes per party, so that's how we'll proceed. And for counsel on the appellants, if you'd like to make rebuttal argument, then please try to stop before your time's totally gone. And if you don't, or if we're questioning you, and people run over, I will probably be as soft to give you an extra minute for rebuttal, but do your best. Okay, appellants, counsel, who's proceeding first to set? Oh, I can't hear Jasmine now. One moment, we will fix the audio. Okay, go ahead. Jasmine, can you speak? I can't hear. Well, maybe we should let everybody say a word or two to make sure we're receiving. Okay. Good morning, your honors. Okay, then Jasmine, can you speak? I'm not hearing. I don't hear Jasmine. Oh, yeah, this is the courtroom deputy counsel. Hooman, can you speak? Can we hear you? Hi, good afternoon, panel and counsel. Perfect. Thank you. Okay, thanks. And Judge Kristen and Judge Press? Yes, good morning, or afternoon. Good morning. Yes, yes, yes. And so for the first appellant, that's counsel, we're going to start you over again. And I'll let you speak, and I'm going to shut up. Counsel, please proceed. Thank you. Good afternoon to the panel and to fellow counsel, and may it please the court. Vishal Jangla did not knowingly or recklessly violate the law. He is not an incompetent prosecutor. He is a public servant who is entitled to the robust protection that qualified immunity offers. Mr. Jangla asks the Ninth Circuit to reverse the district court's decision and grant him summary judgment for two reasons. First, on the judicial deception claim, plaintiffs did not make a substantial showing that he purposefully or recklessly misled the court. It was objectively reasonable, given the existing law at the time, for Mr. Jangla not to detect any material information omitted or misstated in the affidavit. Second, even if the search warrant lacked probable cause on its face, Mr. Jangla has qualified immunity because there was no clearly established decision telling him the affidavit was insufficient as a matter of law. To overcome Mr. Jangla's qualified immunity on judicial deception, plaintiffs must make a substantial showing that Mr. Jangla acted with deliberate or reckless disregard for the truth. Plaintiffs at the district court incorrectly assumed that the mere presence of statements that could be characterized as material misstatements or omissions automatically forfeited Mr. Jangla's qualified immunity. Can I ask a question, counsel? Can I ask a question so you have a chance? Forgive me for interrupting, but you don't have a lot of time. On page 10 of the search warrant application, there is a paragraph that begins, in this case, a 37-year-old male created a false account posing as a juvenile, and it goes on. What evidence was there that the person who created the account was a 37-year-old male? That was Detective Ryan's conclusions that he believed he had formed on the basis of his investigation and that of the Virginia detective. I know it's a conclusion, but I'm just asking very specifically if you could address the point. What evidence was there that supports that statement of fact, please? The Skype account that was used in this case to commit the offense, John Robin 6, was created three months before the offense was committed, and it was an account that was opened using the email address johnrobatgmail.com. In addition to the fact that Mr. Finkelstein's Gmail account was used to open the Skype account, you have the fact that the other investigative leads in the case, unlike the Gmail address, would have pointed a rational investigator in other directions that suggested that they linked to somebody who was not, in fact, the perpetrator. At the top of your argument, you made a reference to the law at the time. Has the law changed in any material way since the time that this search warrant was put together? No, I don't think there's any case that's come out of the Ninth Circuit since Chisholm that is more applicable to this case, Your Honor. So, no, I don't think so. I think this case is a perfect example of why greater specificity and guidance is needed in this area from the court. In addition to respond to Judge Kristen's comment, the other, I think, sort of corroborating piece of evidence was in addition to the three-month lag between the creation of the account and the use of that account to commit the crime was the correspondence or correlation between the name on the Skype account, John Robin 6, and the Gmail account. The other leads, again, in the case pointed to other perpetrators were not credible for other reasons. They said it was a proxy server or that a name, an ID, a photograph, date of birth was created in a chat room designed for teens to try to get contact with a teenage female, and it makes sense that the perpetrator would pose as a teen male from London, UK, whereas there was no reason to have Mr. Finkelstein's Gmail address associated with this account. So, counsel, I just want to give you one more chance. I've heard you not say anything about supporting this statement in the search warrant affidavit. I agree there's a support for the statement that somebody, a person, created a false email account. Just to be clear, is there any support for this conclusion that a 37-year-old male created it? Yes, because the email account belonged to John Finkelstein, who was a 37-year-old male. When the subpoena was served on Google, that is the information that the detectives received back from Google. Well, that just reinforces the trial court's finding that there was only one link between Mr. Finkelstein and the other facts in this case, and that's an email account that could have been stolen by anyone. That's right. That is the link in the case. And the question is whether or not it was clearly established at the time that Mr. Jangla reviewed the affidavit that an unverified email address that belonged to a suspect could provide sufficient fair probability and probable cause to search the owner of that email address for evidence of the crime. There was no clearly existing precedent at the time that told him that that was insufficient, and there was no clearly existing legal precedent at the time that would have told Mr. Jangla that the affidavit had to include information about the difference between verified and validated email addresses. Significantly, Mr. Jangla testified in the state court proceedings that, to him, the difference between validated and verified was not materially significant to the probable cause determination because, and this is uncontroverted testimony, plaintiffs have not presented any evidence to contradict what Mr. Jangla said, that email addresses are hacked all the time and that Yahoo had had over a billion accounts compromised. So that indicates that the fact that the validated-verified distinction was not included in the affidavit was not material. Counsel, Judge Gould. Yes, Your Honor. I don't want to interrupt your argument, but the number on your clock, 147 now, that's time over your initial five minutes. Okay. Thank you, Your Honor. So I'll give you, like, a minute for rebuttal after we hear from appellees. Thank you very much. We should conclude. Okay, now, who's got the next argument? Counsel, Franz Zucco will speak next. Yes, Your Honor, that would be me. Okay. Go ahead, Mr. Okay. Am I out? Okay. Good afternoon, Your Honors. Very good. Good afternoon, Your Honors. May it please the Court. My name is Alex Frank Zucco, and I represent Detective Jeff Chichotsky, a deputy with the Loudoun County Sheriff's Office in the state of Virginia. I hope that you and your families are all safe and healthy during these difficult times. Our time is limited, so I want to focus on two main points. First, that Detective Chichotsky is entitled to judgment on the judicial deception claim. The trial court granted summary judgment to Officer Ryan, but not to Chichotsky, and that ruling simply is not consistent, as they were both similarly situated, and there's really no difference between the two of them when reviewing how the affidavit was prepared and submitted. The second point is that Detective Chichotsky is entitled to qualified immunity because there was no clearly established precedent that included sufficiently specific facts that Chichotsky would be on notice that his actions violated the Constitution beyond debate. With regard to the judicial deception claim, Your Honors, I'd like to make three points. The trial court granted summary judgment to Ryan on the issue involving the Skype language, but denied it as to Chichotsky. That ruling is not consistent. When the trial court issued its opinion, it stated, quote, Given his lack of training and his reliance on review by other officials with experience, he did not act intentionally or with reckless disregard for the truth. That's what the trial judge said in ruling in Ryan's favor. There is no evidence in the record that Chichotsky had any more training than Ryan on the issue of Internet issues. There was some evidence that Chichotsky had some courses on interviewing victims and witnesses in sex crimes, but there was no evidence that Chichotsky had more training on the issues of Internet issues. Furthermore, with regard to review of his investigation, Chichotsky had the same officials review the affidavit, and in addition, he had a senior detective in his own department review some of the facts of his investigation, and even had an FBI agent specializing in sex crimes involved in the investigation. So Chichotsky even had more folks review what he did in this case before ultimately submitting the affidavit. It's important to note that not one of these experienced law enforcement officials who were involved in reviewing the Ryan Chichotsky affidavit brought up the issue of verification when it came to Skype registration, which is essentially what the trial court said where the officers erred in this case. The trial court seemed to excuse Ryan because he incorrectly believed that in his affidavit he said he thought ballot meant the same thing as verification, and he was wrong about that. Chichotsky was wrong also. He made a mistake where he did not realize that somebody could falsely or use a stolen email in setting up a Skype account. They were both wrong in making those assumptions, and at best that might be considered negligence, but that certainly does not rise to the level of judicial deception as a matter of law, and each one of those defendants, Ryan and Chichotsky, should be treated the same way with regard to analyzing the judicial deception claim. The last point with regard to the judicial deception claim, and it's the most ironic point of them all, is that the language that the court is relying on to hold Chichotsky in the case on the judicial deception claim is the language that was drafted by Ryan, not by Chichotsky. The language related to Skype was something that Ryan had changed from Chichotsky's original affidavit, and it seems to be ironic that Ryan gets summary judgment on the issue related to Skype, but Chichotsky doesn't, when Chichotsky wasn't even the one that drafted the language. The trial court conceded that the language that was ultimately in the Ryan affidavit was taken straight from the Skype website, so what Ryan was trying to do was trying to be more transparent and not mislead the court as he used the precise language that Skype had in terms of how to register for a Skype account. So using that language from the internet, there was no intent on either of the parties to deceive Ryan or Chichotsky, and it certainly wasn't reckless. I see that I'm out of time, and Your Honor, if I could, if possible, I'd like to have another minute for rebuttal, if I may. Yes, we will definitely give you a minute for rebuttal. Thank you. You're welcome. Now who's the third appellant arguing now? Which counsel? Good afternoon. Am I live? Hello, good afternoon. Can you hear me? Yes, Ms. Albers, I can. My name is Ms. Albers, and I represent Officer Nicholas Ryan in this case. I wanted to talk to you today about the warrant and probable cause and the denial of the court, district court below, of qualified immunity to Officer Ryan in this issue. We've outlined in our briefs several ways which we believe that the district court got the standard wrong when it comes to qualified immunity, and I just want to hit the high points. First, on its face, you know, the first part is, was there a constitutional violation? Does this warrant have probable cause for the search? Did the officers have probable cause? We do believe that there was probable cause here. But even if there wasn't, if there is arguably probable cause, if it is not obvious that there was a lack of probable cause and there's no clear, fully established precedent establishing the lack of probable cause, Officer Ryan is entitled to immunity in this case. The points that suggest to go to the court's earliest question that support the 37-year-old male who created the account, you have John Robbins 6 is the Skype user account, and then you have an email address that's not public that's johnrobb at gmail. That comes back and is then traced to that email address, johnrobertfinkelstein. Then the johnrobertfinkelstein also has a secondary backup email account where he uses the same combination, johnrobb at gssanford.sanford.edu. The point is, Judge Chen's point, if you could go to the point of the order, because it's entirely unsurprising, right? If somebody's email account was stolen, then of course the rest is going to trace back to an actual person, his actual address, his actual phone number. So none of that is surprising. It's what linked the defendant to all of the other actually factually accurate information. And I think the drawcard sounded, it was one email. Anybody could have stolen it. So could you speak to that? Why couldn't a jury decide that that was reckless to rely on one email that could have been stolen, please? Well, reckless, meaning not obvious for the Stanford Qualified Immunity, because my client doesn't have judicial immunity, judicial deception before them. That court granted the motion for summary judgment in our favor on that point. But the johnrobbins6, to use a combination of both johnrobbins and johnrobbins that you use in your own, it's used in the email. If somebody wanted to make it up and they were trying to hide, why just enter random information? Why not try to coordinate the username that you're going to create the account with with the fake email address that you're going to give to your account? And the email address and the username are something that that person who creates the account is going to have to go back and remember and log back in to use the account. So as we showed in a declaration by Aaron Edwards in the record, an expert in this, they often use combinations of their real names so they can remember the fake account. This was created three months prior to the incident, the underlying incident, and it was used for a crime. But there's this idea that if somebody wanted to just fake up a name, why use names that coordinate with the username and the email name? And yes, somebody could have just been entering random numbers, but somebody also could not have been entering random numbers. Well, I'm not suggesting it's random. I think the point is not that the district court thought it was a random name or number with an actual email. It's just that it was stolen. I mean, that's the point, right? And so the fact that the rest of it lines up is not remarkable. There's no proof it was stolen. It traces back to a 37-year-old male who's a software engineer and has the ability to use a proxy server. It doesn't trace back to an 85-year-old grandma who wouldn't know a proxy server that jumped up in the theater. So the affidavit doesn't mention the proxy server. The affidavit actually doesn't. You're now straying into facts that actually aren't in the affidavit. The affidavit mentions the fact that a proxy server was used. But the claims that the suspect claimed that one was used, the fact that the IP address went back to NANDIA substantiates that claim. And there are two claims about probable cause in this case. One is on its face, and one is just a general conducting a search with a lack of probable cause. But even if, regardless of that, in that case, you could look beyond the four quarters, as the district court did. But here, what is even more, this is debatable. If somebody gets a debatable argument as to whether or not there's probable cause, and in that situation, when a judge, the magistrate judge at first, the ADA, another officer who specializes in Internet crimes, who all reviewed the application to my client, was back and said, doesn't say there's no probable cause, proves the warrant application, and then he relies upon that under President Messenger-Schmidt and Sharp, not obvious. And so you're entitled to your good faith relief in probable cause, and you're entitled to qualified immunity. I know that I'm flashing red, so if the court has any other questions, I'll entertain those. Otherwise, I'd like to have a minute. Okay, I'm definitely going to give you a minute for rebuttal. But let me ask Judge Christin and Judge Press, do you have questions for this counsel now? I do not. No, I'm good. Thank you, Judge Gould. Thank you both. Okay, well, then we'll let the appellee's counsel take center stage. Thank you, Ms. Alberts. Thank you, Judge. Is Mr. Finkelstein? I'm here, but I don't seem to be active. We can hear you, but it's very fuzzy. Well, I'm not in the center position. Something's not correct. Is this better? I can hear you, Cal. Can you see me? We can see you. Oh, I didn't realize that. Okay. I'm seeing Ms. Alberts. We still have Ms. Alberts on the screen, but now she's magically disappeared. Okay. We're going to let Mr. Finkelstein proceed. Good afternoon, Your Honors. Julius Finkelstein, appearing on behalf of the plaintiff's appellees. May it please the Court. Your Honors, because this is an interlocutory appeal, the only issues that can be decided are whether the facts, even when considered in the light most favorable to the plaintiffs, show no violation of a constitutional right or no violation of a right that is clearly established. So defendants' arguments about the district court not finding a substantial showing are not reviewable in this interlocutory appeal. Your Honors, probable cause was obviously lacking here because there was no reliable evidence identifying the suspect. Probable cause has to be shown with reliable evidence. What we have here- Well, if we look at the totality, counsel, and I think opposing counsel didn't quite- I don't think we quite communicated. There's actually a fact left out of the affidavit. So when you hook together the proxy server together with the fact that what they knew but left out, which is that Mr. Finkelstein had this degree in computer science from Stanford, would have been a computer-savvy guy, and that actually lends support to the state's position. Would you like to speak to that point? I don't think we were communicating earlier, but there's actually information left out here. Okay. So the actual statement in the affidavit, I believe it's page 6, is the detectives believed, because the IP address was identified as coming from Namibia, Africa, and the suspect had told the victim in a text message that he couldn't be traced by the police because he was using a proxy, that it was likely that the suspect was using a proxy server. However, there's no actual evidence other than these beliefs that a proxy server was in fact used, and even assuming that a proxy server was used, someone sophisticated enough to use a proxy server would not just volunteer his own identifying email address, especially someone such as this criminal, who repeatedly provided obviously false information in both his profile and also nonsensical information in his profile. He claimed he lived in London, UK, in the West African time zone of GMT. I guess the difficulty is, what is the clearly established law that said that this failed to satisfy a probable cause? Because it seems to me there's a real dearth of cases that would support that. Even if you're correct that probable cause was lacking, where is the law that would have told these officers that it was clearly established that they shouldn't do this? Well, there is a case involving similar conduct, and that's Chisholm. And the lack of probable cause in this case is even more obvious than it was in Chisholm. And this court found more in Chisholm in a passage that Chisholm Court quoted from a Washington State police manual that said that an email address, if uncorroborated, would likely lead to an innocent person. Right, but I don't think... That's a lot to read into that reference to one state's police manual, that that would have been clearly established law. I find that hard to wrap my head around. I think there's more to it than that. I know, although the defendants suggest that Chisholm is only about judicial deception, it's actually about a lot more. Because in deciding the judicial deception issue, Your Honors, the Chisholm Court had to decide whether a corrected affidavit established probable cause. And the corrected affidavit that the court found in Chisholm was an affidavit that relied solely on a credit card number that was used to pay for the two web hosting sites that contained the child pornography. And our point is, a credit card number is far more reliable than an email address. When you have a credit card number and a credit card, the issuer requires that you verify your identity under some very strict controls. All we have in this case is an email address that didn't have to be verified. It didn't require the criminal to have access to the email account for that address. Right, but this issue was not part of Chisholm. I think that's the difficulty I have. Chisholm has some thematic overlaps with this case, but beyond that, I find it very difficult to read Chisholm and say that that decision would set clearly established law, such that these officers and a lawyer should be denied qualified immunity. Well, is Your Honor talking about the probable cause claims and qualified immunity? You're on the reckless disregard piece of this. Well, I'm talking more specifically about probable cause, but I think it applies to both. Well, it's also the case that the Supreme Court in several decisions has acknowledged that if the warrant is so lacking in addition of probable cause that no reasonable officer could believe it established probable cause, a specific case on exact same facts is not required. Counsel, I think you just missed part of Judge Bress' point. I'm sorry. Well, that's okay, but I just think it's an important point you may have glossed over. He's asking you questions about whether there's clearly established law out there. I tend to think that Chisholm is quite distinguishable, by the way, about whether these defendants, that's just me, about whether these defendants were on notice. But what Judge Bress just mentioned is he thinks this is an equally applicable provision, consideration for purposes of the judicial deception claim, and I think you haven't answered that. Are you agreeing with his point on that? No, because this circuit has consistently ruled that on a judicial deception claim, the inquiry is not whether there's clearly established law because no reasonable officer could think that it's permissible to use deception to obtain a warrant. The standard on the judicial deception claim is have the plaintiffs made a substantial showing of judicial deception to get to a jury, and the reason we've made a showing here is the prosecutor acknowledged that the phrase valid email address when used by website means that the email address is only valid in form. It doesn't mean a verified email address. How is that? If I can cut to the chase, I want to make sure that I understand, so I can turn you over to Judge Bress. I understand your answer to be that your view of the law is that on the judicial deception claim, it's a one-step test, not two steps, and the question is at summary judgment whether the evidence is such that reasonable jurors could decide that the defendants were reckless. Full stop. That's my understanding of your view of the law. Is that your understanding? Is that what you're saying? Yes, they acted in reckless disregard of the truth or intentionally. Okay, I want to get out of Judge Bress' way now. I just wanted to make sure I understood your position. Thank you. Yes. You were about to begin talking about Deputy District Attorney Janglin's testimony, and the question I have is in what sense does that testimony give rise to a judicial deception claim? He may have been wrong about the law and whether this was probable cause, but in what sense is there a deception of the court when he had a certain understanding of some of the language used in the search warrant, and he believed that, whether he was ultimately right or not? Well, I believe the record, the evidence in the record shows the affidavit asserted that in order to create a Skype account, a valid email address is necessary, and that the plaintiff's email address was used to register the account. What the affidavit did not explain, but Janglin admitted knowing in testimony in the state court, a valid email address is a somewhat technical term that means it's something at something dot com. It's in the form of an email address. It doesn't mean valid in the sense of a valid ID, a valid driver's license, or that the person supplying the email address had to take some act to prove that he was the owner of the email address. He knew that, he admitted that, and he also knew, so... But in what sense is that deception? I mean, that's a fairly strong charge to levy against someone to deceive the court, and here he had a certain understanding of certain words, which I think we both agree have a technical meaning to them, and it turns out here different people had different views of what those words meant. But again, he may have been wrong, and maybe this affidavit was not supported by probable cause, but did he... In what sense does his truthful testimony lead to the conclusion that he was then deceiving the court? When the state judge who originally issued the warrant learned that the valid email address didn't mean a verified email address, and that the email address did not have to actually be used in any meaningful way that suggested control over the account, it only had to be typed onto the website as text. And, for example, aa.bb.com is a valid email address, but it's not a working email address. It's just text in the form of an email address. Counsel, we understand that, but I don't think you're answering Judge Brest's very important question. Okay, I apologize. Perhaps I'm not understanding the question. Could you... Well, let me ask it this way. Here we have a deputy district attorney who is deposed in court under oath and gives an answer as to what he understood by the search warrant. And he is not saying that he had... He believed that it meant a certain thing. He believed that was sufficient for creating probable cause. Maybe he was wrong as a matter of law. Maybe his legal reasoning was flawed. But in what sense was this... Can we take this and say, well, that was judicial deception? Because he didn't admit to deceiving the court in any way. No, he didn't admit to deceiving the court. But the magistrate judge in state court who issued the warrant concluded he was deceived. And Judge Chan found as a factual matter that the language that a valid email address was necessary and that the email address had been used, that a jury could find that that was deceptive because, in fact, it didn't mean a verified email address. It only meant text in the form of an email address. Come on, I think what the ruling was... I think the ruling was... I think the point is... I really want to make sure we're right about this. Because I think Judge Bress is going straight to the question that I have in the case, which is, do you have to show that the defendant's intended to deceive or is recklessness sufficient? What did the district court find about whether or not It found both ways. It found there was sufficient showing of both intentionality and recklessness. Okay, so let's say, just as a hypothetical, that I don't think there's a showing of an intent to deceive here. The question on my scorecard, and I'm only one of three, just assume as a hypothetical that the question on my scorecard is whether this evidence would allow reasonable fact finder to decide that the defendants were reckless. What's your best shot at that, please? Okay, okay. He's approving a warrant for submission to a judge who may not have his technical understanding of what a valid email address means, but he's making no effort to clarify that there's no confusion. It doesn't mean a verified email address. For example, if I can just give this example, the suspect put in the name Peter Mayfair, gave that name to Skype. Because it's unverified, everyone believes it's fake. It's false. He put in the London, UK address. The address is unverified, so it has no credibility. An email address, which is already not very credible, would have no credibility if it's just another piece of fake information supplied by the criminal. And so it was crucial to get the warrant approved by the state judge to have the judge conclude this email address was somehow different from every single other piece of false information provided by the suspect. He had a picture of a 16-year-old boy. He claimed he had a birthdate for a 16-year-old boy. Nothing he provided was true. But miraculously, this email address is true and reliable because it traces back to someone. And if I may just say one other thing, he didn't have to know that the email address belonged to someone because Skype only required valid and form. He could have selected the username JohnRobin6, which is the first step in creating an account, and then truncated that, added the at sign in Gmail, typed it in, and guess what? It worked. An account was created. He didn't have to know it belonged to someone. The problem, I guess, is again, when you're making the point it was a reckless disregard for the truth, he believed that the text of the search warrant was accurately stated and he believed that that was sufficient for probable cause. So again, I don't see how we can say that it met these high standards that would lead to a judicial deception claim. Because, two points, Your Honor. Because he had no reason to believe that the judge reviewing it had his technical knowledge and the language susceptible of being construed the very way that the state judge construed it. You know, it isn't often that we have the victim of judicial deception making a statement of whether he was deceived or not. We have it in the judge's order, the state judge's order. And in any event, this is a factual issue where there was a substantial showing that the plaintiffs don't believe is reviewable on interlocutory appeal. Unless the court has questions, I see my time is up, Your Honors. The time is up. Are there questions for Judge Christin? Hearing none. Not for me. Well, thank you. Thank you very much, Your Honor. Thank you. You have one minute for a rebuttal argument for each appellant. Ms. Heumann. Thank you, Your Honor. There was no reason, taking into account the standard of fair probability that evidence of a crime will be located in the place to be searched, there was no reason that DDA Jangla had to distrust the johnrobatgmail.com address providing a fair probability, unlike the picture and date of birth of a teenage male in a teen chat room or an IP address that led back to Namibia with the suspect's claim to the victim that he was using a proxy server. Because there was no reason to distrust that and because the standard is fair probability and not preponderance or something higher, Mr. Jangla acted reasonably. The lack of clearly established precedent is made so clear in Chisholm, where on the one hand, Chisholm cited Craighead for the proposition that linking an IP address to the subject provides probable cause, but also quoting the Washington State Manual that said, much if not all cyber evidence, including IP addresses, will lead you to an innocent person. There are conflicting messages in Chisholm and I think that makes it so clear for all of us that that case fails to provide clear precedent that would have made it obvious to Mr. Jangla that the warrant was insufficient in terms of providing probable cause. There was not an obvious lack of probable cause. There was a fair probability  that evidence would be found at the location to be searched and for that reason, Mr. Jangla is protected by qualified immunity in this case. Okay, counsel. Thank you. I'm afraid you're over your extended time. Thank you. Thank you very much. Go ahead, Mr. Frank Husanko. Thank you, Your Honor. Briefly, the focus, I think, that the trial court had with regard to the affidavit was that the words valid and use were related to the Skype account, registering to the Skype account and again, that was language that was taken straight from the Skype website when Officer Ryan was authoring that portion of the affidavit. If that affidavit had the word verified in it, if they had actually said that it was a verified account or an email, then yes, that would have been deception. That would have been intentionally deceptive and at the very least reckless but to use the words straight from the Skype website cannot be considered intentionally deceptive and I would argue as a matter of law it cannot be considered reckless and in the Chisholm case, the Chisholm case folks focused on direct misstatements including that the Chisholm's used the credit card to buy pornography which was simply false. We don't have that in this case. There's no facts that the plaintiffs can point at or that the court has pointed at that false statements were made. Do you think that's true? What about the statement on page, I believe it's six. Maybe it's 10. It's page 10, counsel. In this case, a 37-year-old male. Yeah, in this case, a 37-year-old male created the false account. That goes again to the linchpin of the case that the email account that the Skype account was set up with was a 37-year-old man so that was the end conclusion of the link that was started with the investigation that was obtained through the Skype account. I concur with what counsel said earlier that it all comes back to the information that they developed from the subpoena to Skype then a subpoena to Google and then a subpoena to AT&T which all led back to Mr. Finkelstein. I think you're over your time now. Yes, Your Honor. Unless there are questions from Judge Kristen or press. No, not for me. Well, thank you. Thank you, Your Honor. No questions, sir. Stay well. Thank you. Can you hear me? This is Kathryn Alberts. Yes, Ms. Alberts, I can hear you and see you. I think you are displayed here now. Okay, thank you. To go back to one point that was made, the totality of the circumstances in using to look at probable cause does meet the fair probability that evidence of the crime committed will be found at Mr. Finkelstein's house. The one piece of evidence that is not trustworthy, the email, it's the one piece that's not seen to the public in terms of hiding the identity of the perpetrator from the victim. John Robb's email is more reliable because it is a hidden piece of evidence from the suspect, the person who is being, from the victim, sorry. That gives it an indication of more reliability than when combined with the other things we talked about. The totality of the circumstances shows fair probability. Even if the court finds that it doesn't, it's arguably debatable that it does. And on that instance, given the fact that there's no clear and convincing case law, sorry, clearly established case law, given the fact that another Internet Crimes Office deputy reviewed the application and that the DDA reviewed the application and that initially the judge approved the application shows under Messerschmitt that qualified immunity for the officers, especially Officer Ryan, should have been granted in this case and is warranted. He was not, he was relying on good faith, on an arguable offer for probable cause, and he was not one of the plainly, he's not plainly incompetent such that he should be excluded from the protection of qualified immunity. Okay, thank you, counsel. You're over your time. So unless Judge Kristen or Judge Bess have a question, we'll conclude. Thank you, Ms. Alvarez. Thank you, Your Honor. So that concludes the argument. And I want to thank Mr. Finkelstein, thank Ms. Alberts, thank Mr. Fred Cusack, and thank Ms. Newman for their excellent arguments. And this case shall now be submitted. And the court, I think, will adjourn for the day. Thank you all. Judges, I will close the session. All rise. This court for this session now stands adjourned.
judges: Gould, Christen, Bress